**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CINDY A. EDWARDS,**

                                **Plaintiff,**

       **vs.**                                              **5:14-cv-1329**
                                                            **(MAD/DEP)**

**ONONDAGA COMMUNITY COLLEGE,**

                                **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**CINDY A. EDWARDS**
27 Fennell Street, Suite B
Box 162
Skaneateles, New York 13152
Plaintiff *pro se*

**ONONDAGA COMMUNITY COLLEGE**      **KEVIN M. MOORE, ESQ.**
4585 West Seneca Turnpike
Syracuse, New York 13215
Attorney for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On October 31, 2014, Plaintiff Cindy A. Edwards ("Plaintiff") commenced this action *pro*

*se* pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*

*See* Dkt. No. 1; Dkt. No. 19-2 at 4.  Defendant Onondaga Community College ("Defendant") and

Plaintiff both filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure ("Rule 56)", seeking dismissal of Plaintiff's complaint in its entirety and a

judgment of liability, respectively.  *See* Dkt. Nos. 27; 29.

## II. BACKGROUND

Plaintiff was employed by Defendant as a part-time, temporary academic tutor on a per diem basis from the Fall semester of 2003 through the Spring semester of 2013.  *See* Dkt. No. 27-2 at ¶ 1.  Plaintiff worked in the Content Tutoring Center ("CTC") where she tutored in the academic areas of architectural technology, meteorology, and interior design.  *See* Dkt. No. 12-1; Dkt. No. 27-2 at ¶ 1; Dkt. No. 27-9 at ¶ 4.  The CTC employed more than one hundred twenty people and, among those, forty-one tutors were classified as Academic Tutor II, which was Plaintiff's classification.  *See* Dkt. No. 27-2 at ¶ 32; Dkt. No. 27-9 at ¶ 12.[1]  The Academic Tutor II is a classification that requires the employee to have a bachelor's degree in addition to more tutoring experience than the classification of Academic Tutor I.  *See* Dkt. No. 27-9 at ¶ 12.

The terms and conditions of Plaintiff's employment by Defendant were outlined in a document entitled "Content Tutoring Center Onondaga Community College Tutor Agreement," (the "Agreement") and the document was signed by Plaintiff.  *See* Dkt. No. 12-1.  The Agreement stated, in part, that Plaintiff's position was a part-time, temporary position and that the Agreement was not an employment contract, obligation of employment, or continued employment.  *See id.* In addition to academic tutoring, Plaintiff performed clerical work and receptionist work on a part-time basis for the CTC.  *See* Dkt. No. 27-2 at ¶¶ 5-6.  The tutoring work hours varied and were unpredictable because they depended on the amount of student demand for tutoring services. *See id.* at ¶ 8.

---

[1] The Defendant's Director of Human Resources and Labor Relations, John Geer, provided the Court with a list of these classified tutors and their ages.  *See* Dkt. No. 27-9 at ¶ 12.

During the Fall of 2012 – the relevant period of time in the complaint, Plaintiff was fifty-four years old.  *See id.* at ¶ 9.  At that time, Plaintiff's immediate supervisor was Wendy Hammond, the Coordinator of the CTC was Karen Hale, and the overall Administrator was Eunice Williams.  *See id.* at ¶ 10.  In September 2012, Wendy Hammond asked Plaintiff to train a newly hired tutor, Paula Gould, to do the clerical work that is a normal part of the CTC operations.  *See id.* at ¶ 11.  Thereafter, Karen Hale decided to remove Plaintiff from the reception desk in the evening hours, and Plaintiff was informed of her removal on October 23, 2012.  *See id.* at ¶¶ 13, 21.  Abel Pinker, who was twenty-six years old, replaced Plaintiff for those evening hours, and he was paid a lower hourly rate.  *See id.* at ¶ 21.  After Plaintiff's removal from the reception desk, she was not limited in her hours for tutoring in her subject areas.  *See id.* at ¶ 24.  Plaintiff lodged a complaint via email with Defendant's Human Resources Department on October 29, 2012, and she alleged a hostile work environment but did not reference any age-related discrimination.  *See id.* at ¶ 25; Dkt. No. 27-9 at ¶¶ 6-8; Dkt. No. 29 at 26.  As a result of this complaint, Plaintiff's direct supervisor was changed from Wendy Hammond to Karen Hale.  *See* Dkt. No. 27-2 at ¶ 28.  In November 2012, Plaintiff filed a "Notice of Intent" with the Equal Employment Opportunity Commission ("EEOC").  *See id.* at ¶ 29.  By notice dated July 29, 2014, Plaintiff was notified that the EEOC dismissed the claim and provided notice of Plaintiff's right to file a lawsuit.  *See* Dkt. No. 1 at 11.

On October 31, 2014, Plaintiff commenced this action *pro se* alleging violations of the ADEA.  *See* Dkt. No. 1.  In a Report, Recommendation, and Order dated December 17, 2014, Magistrate Judge David E. Peebles granted Plaintiff's application to proceed *in forma pauperis* ("IFP").  *See* Dkt. No. 4.  Magistrate Judge Peebles recommended that Plaintiff's claims for termination of employment, failure to promote, and creating a hostile work environment in

violation of the ADEA be dismissed because Plaintiff failed to plausibly allege those claims. *See*

Dkt. No. 4. He also recommended that Plaintiff be granted leave to amend her complaint on the

claims for failure to promote and creating a hostile work environment. *See id.* Additionally,

Magistrate Judge Peebles recommended that the claims against the individually named defendants

be dismissed because there is no individual liability under the ADEA. *See id.*

This Court adopted Magistrate Judge Peebles' Report, Recommendation, and Order in its

entirety, and granted Plaintiff leave to replead the dismissed ADEA claims. *See* Dkt. No. 5.

Although several claims and the individual defendants were dismissed, this Court accepted

Plaintiff's complaint with the following claims: (1) a violation of the ADEA by reducing her

working hours and (2) a violation of the ADEA by engaging in retaliation against Plaintiff. *See*

Dkt. Nos. 1, 4, 5. Plaintiff's time to amend her complaint has expired, and the parties have both

moved for summary judgment pursuant to Rule 56. *See* Dkt. Nos. 15, 27, 29.


## III. DISCUSSION

### A.   Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the undisputed facts warrant judgment for the

movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.

1994) (citations omitted). "The moving party bears the burden of showing that he or she is

entitled to summary judgment." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must identify the basis for

the motion as well as those portions of the record which demonstrate that there is no genuine

issue of material fact. *See Celotex*, 477 U.S. at 323. When analyzing a summary judgment

motion, the court "cannot try issues of fact; it can only determine whether there are issues to be

tried." *Chambers*, 43 F.3d at 36-37 (quotation marks and other citation omitted).

If "a properly supported motion for summary judgment is made," then the burden of

production shifts to the non-movant to "set forth specific facts showing that there is a genuine

issue" of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal

quotation marks and citation omitted). It is well-settled that a party opposing a motion for

summary judgment may not simply rely on the assertions in its pleadings. *See Celotex*, 477 U.S.

at 324 (citing FED. R. CIV. P. 56(c), (e)). In assessing whether any such issues of material fact

exist within the record, the court is required to resolve all ambiguities and draw all reasonable

inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477

U.S. at 255) (other citations omitted).

**B.      Local Rule 7.1(a)(3)**

In evaluating the Parties' motions for summary judgment, the Court initially notes that

Plaintiff has not complied with Local Rule 7.1(a)(3) in her motion for summary judgment or in

her opposition to Defendant's motion for summary judgment. *See* Dkt. Nos. 29, 33. The

"[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts

shall result in a denial of the motion." L.R. 7.1(a)(3). Here, Plaintiff included a brief section

entitled "STATEMENT OF FACTS" which states in its entirety, "As documented in Exhibits 1

through [_] filed concurrently with this Affidavit, together with evidence of record already filed

with the Court. Plaintiff also relies upon its original complaint and Defendant's answer." Dkt.

No. 29 at 5.

Plaintiff's motion papers are not in compliance with the local rule requirement. *See id.* A

party's *pro se* status "'does not exempt a party from compliance with relevant rules of procedural

and substantive law.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)

(quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *see also Cusamano v. Sobek*, 604 F.

Supp. 2d 416, 427 (N.D.N.Y. 2009) (stating that "even *pro se* litigants must obey a district court's

procedural rules").  Without a Statement of Material Facts, Plaintiff has failed to support her

entitlement to summary judgment.  *See, e.g.*, *Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436,

452 (N.D.N.Y. 2013).  Accordingly, Plaintiff's motion is denied.

Local Rule 7.1(a)(3) also requires a party opposing a motion to file a response admitting

or denying each of the numbered paragraphs in the movant's Statement of Material Facts.  "Each

denial shall set forth a specific citation to the record where the factual issue arises. . . .  The Court

shall deem admitted any properly supported facts set forth in the Statement of Material Facts that

the opposing party does not specifically controvert."  *See* L.R. 7.1(a)(3).  In opposition to

Defendant's motion, Plaintiff submitted an eight page document that does not reference

Defendant's Statement of Material Facts or any of the numbered paragraphs therein.  *See* Dkt. No.

33.  Plaintiff's opposition together with her affidavit attempts to address the factual assertions

contained within the affidavits submitted by Defendant, but Plaintiff does not provide specific,

supporting citations to the record.  *See id.*  As stated above, a litigant's *pro se* status does not

relieve them of the procedural requirements of Local Rule 7.1(a)(3).  *See Cross*, 926 F. Supp. 2d

at 442; *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (noting that the courts of

the Northern District of New York strictly apply Local Rule 7.1(a)(3)).  Consequently, the Court

accepts the properly supported facts stated in Defendant's Statement of Material Facts.

**C.     Age Discrimination in Employment Act**

*1. Age Discrimination*

The ADEA was created "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."  29 U.S.C. § 621.  It is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623.  The burden-shifting analysis set fort in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to claims for ADEA violations.  *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)).  Under this three-step framework, the initial burden is on the plaintiff to establish a *prima facie* case of age discrimination.  *See id.* at 168.

To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must demonstrate that he or she was in the protected age group of forty years or older, was qualified for the position at issue, and suffered an adverse employment action, and that the identified adverse action occurred under circumstances giving rise to an inference of discrimination.  *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194-95 (2d Cir. 2007) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (citing *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) *abrogated in part by Gorzynski*, 596 F.3d at 106 (finding that the Supreme Court in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) changed the last part of the age discrimination analysis)).  The purpose of the *prima facie* case is to create a presumption that, under these circumstances, an employer considered impermissible factors and, thus, "unlawfully discriminated against the employee." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  This initial burden must be shown by a preponderance of the evidence, and the Second Circuit has characterized the burden

7

as "not onerous," *Delaney*, 766 F.3d at 168, "not heavy" or "minimal," *Carlton*, 202 F.3d at 134,

and "*de minimis*," *Chambers v. TRM Copy Ctrs. Corps.*, 43 F.3d 29, 37 (2d Cir. 1994).

In this case, Plaintiff was fifty-four years old during the relevant time period, and it is not

in dispute that she was qualified for her position as an Academic Tutor II and clerical desk

assistant in the CTC.  *See* Dkt. No. 27-4 at ¶¶ 3-5.  Plaintiff claims that her removal from the

reception desk, which she was regularly scheduled in the evening for approximately sixteen hours

per week, was an adverse employment action.  *See* Dkt. No. 1 at 6-8; Dkt. No. 12 at ¶ 45.  An

adverse employment action is defined by the courts to be "a 'materially adverse change' in the

terms and conditions of employment." *Sanders v. New York City Human Resources Admin.*, 361

F.3d 749, 755 (2d Cir. 2004) (citing *Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d

426, 446 (2d Cir. 1999)).  "To be materially adverse, a change in working conditions must be

'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting

*Terry*, 336 F.3d at 138).  However, a materially adverse change under the ADEA encompasses

more than just a job termination or the reduction of wages.  *Wanamaker v. Columbian Robe Co.*,

108 F.3d 462, 466 (2d Cir. 1997).  Examples can also include "'a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation.'"

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v.*

*Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

The Court finds that Plaintiff met her initial burden by showing that the loss of her

position at the evening reception desk with regularly scheduled shifts, totaling sixteen hours every

week, was more than a mere inconvenience or alteration of her job responsibilities.  *See, e.g.*,

*Little v. National Broad. Co.*, 210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002) (finding that a change in

a work schedule that results in an actual loss of income can be a materially adverse employment action).  Plaintiff's regularly scheduled shifts at the evening desk were not changed to another time, but she lost those hours.  Her removal from that part of her employment with Defendant and her actual loss of income sufficiently establishes a material adverse change in the terms and conditions of her employment.

The last part of a *prima facie* case, requiring a plaintiff to establish that the adverse action occurred under circumstances giving rise to an inference of discrimination, can be established by showing that the plaintiff was replaced "by a significantly younger person."  *Carlton*, 202 F.3d at 135 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)); *see also Papalia v. Milrose Consultants, Inc.*, No. 09 Civ. 9257, 2011 WL 6937601, *9 (S.D.N.Y. Dec. 29, 2011).  Here, it is not in dispute that Plaintiff's evening shift at the reception desk was taken over by a twenty-six year old man.  *See* Dkt. No. 12 at ¶¶ 46, 60; Dkt. No. 27-4 at ¶ 14. Accordingly, the Court finds that Plaintiff has established a *prima facie* case of age discrimination under the ADEA and, thus, raised a rebuttable presumption of discrimination.

Under *McDonnell Douglas*, the burden then shifts to the defendant to "produce evidence 'which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'"  *Carlton*, 202 F.3d at 136 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509).  It is axiomatic that the supporting or opposing materials submitted on a motion for summary judgment "must be admissible themselves or must contain evidence that will be presented in admissible form at trial."  *Delaney*, 766 F.3d at 170 (internal citations and quotation marks omitted); s*ee also Texas Dept. of Cmty. Affairs*, 450 U.S. at 255.  With this evidence, "'[t]he defendant need not persuade the court that it was actually motivated by the proffered reason [].  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it

discriminated against the plaintiff.'" *Delaney*, 766 F.3d at 168 (quoting *Texas Dept. of Cmty. Affairs*, 450 U.S. at 254).  Where a non-discriminatory reason is articulated by the defendant, "the presumption of discrimination raised by the *prima facie* case 'simply drops out of the picture.'" *Carlton*, 202 F.3d at 134-35 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 510-11).

Defendant contends that Plaintiff's claims should be dismissed because, even assuming Plaintiff established a *prima facie* case of age discrimination, Defendant has "proffered three legitimate, nondiscriminatory reasons for any adverse employment action against [P]laintiff" satisfying its burden under *Delaney*, 766 F.3d 163.  *See* Dkt. No. 27-3 at 5-17.  Defendant submitted the sworn affidavit of Karen Hale, who was the person responsible for the removal of Plaintiff from the evening reception desk, and she proffered three non-discriminatory reasons for removing Plaintiff from the reception desk.  *See* Dkt. No. 27-4 at ¶ 5.  First, Karen Hale cited Plaintiff's history of being difficult to "deal with personally, including hostility to [Plaintiff's] supervisor, Wendy Hammond, and to another tutor."  *See id.*  Plaintiff's hostility was the cause of several conflicts where voices were raised and papers were thrown.  *See id.*  Second, Karen Hale suspected that Plaintiff improperly accessed confidential information contained in personnel files that were maintained at the reception desk.  *See id.*  Third, Karen Hale interpreted some of Plaintiff's statements about a student as racially insensitive.  *See id.*  Based on this admissible evidence, the Court finds that Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's removal from the reception desk.[2]

---

[2] In opposition to Defendant's motion, Plaintiff submitted a request to strike the affidavits submitted by Defendant because they contain information not previously disclosed.  Plaintiff does not cite to any valid evidence that Defendant violated the discovery order set by Magistrate Judge David E. Peebles.  Consequently, there is no valid basis to strike the affidavits.  Plaintiff also summarily asserts that Karen Hale's affidavit contained inadmissible hearsay.  *See* Dkt. No. 33 at ¶ 6.  Without reference to any particular statement, the Court declines to make line by line hearsay rulings on Karen Hale's affidavit.  However, the Court has considered only evidence that

Without the presumption of the plaintiff's *prima facie* case of discrimination, "the burden shifts back to the plaintiff to offer proof 'through presentation of his [or her] own case and through cross-examination' that would allow a rational factfinder to conclude that the proffered reason was not the true reason for the adverse employment action, and that age was." *Carlton*, 202 F.3d at 135; *see also Delaney*, 766 F.3d at 168 (stating that the plaintiff must prove that the proffered reason is a "pretext" for age discrimination); *Gorzynski*, 596 F.3d at 106. "'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor."[3] *Gorzynski*, 596 F.3d at 406 (quoting *Gross*, 557 U.S. at 180 (finding that, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision")).

In this case, Defendant has demonstrated through properly submitted evidence that Plaintiff was removed from the evening reception desk for a non-age related reason. Specifically, Defendant submitted admissible evidence that Plaintiff's removal was cause by her discord with her supervisor, Wendy Hammond, and another tutor, Paula Gould, in the Fall of 2012. *See* Dkt. No. 27-4 at ¶ 5. These problems led to rude behavior, confrontations with loud voices, and incidents of throwing papers. *See id.*; Dkt. No. 27-5 at ¶ 5. Karen Hale decided that Plaintiff was

---

would be admissible at trial. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014).

[3] Prior to *Gross*, a plaintiff had to prove that age was one of the motivating factors in the adverse employment action; a plaintiff did not have to prove that age was the principal factor in the adverse employment action. *See Carlton*, 202 F.3d at 135. In *Gross*, the Second Circuit acknowledged the change in the last part of the age discrimination framework and found that a plaintiff must prove that age was a "but-for" cause of the adverse employment action. *See Gorzynski*, 596 F.3d at 106.

not an appropriate person to represent the CTC at the reception desk and removed her on October

23, 2012.  *See* Dkt. No. 27-4 at ¶¶ 5, 8.  Karen Hale and Wendy Hammond specifically affirmed

that Plaintiff's age was not a factor in the decision to remove Plaintiff from the evening reception

desk hours.  *See id.* at ¶ 18; Dkt. No. 27-5 at ¶ 17.  Defendant also submitted the affidavit of John

Geer, the Director of Human Resources, which stated that his office received Plaintiff's complaint

alleging rude behavior by Wendy Hammond but that it did not reference any age-related hostility.

*See* Dkt. No. 27-6 at ¶ 11.  John Geer also affirmed that the positions of Academic Tutors II,

which was Plaintiff's position, are held by employees whose ages range from eighty-five to

twenty-two.  *See id.* at ¶ 12.

In opposition, Plaintiff does not disputed that she had a tumultuous work relationship with

Wendy Hammond.[4]  *See* Dkt. No. 1 at 7.  Although Plaintiff presents that Wendy Hammond

caused their work relationship problems, Plaintiff does not assert that any age-related hostility

was directed at her.  *See id.*  Plaintiff has not come forward with any evidence that Defendant's

proffered reason for the reduction of her working hours was a pretext for age discrimination.

Accordingly, she has not raised a genuine issue of material fact that her age was a "but-for" cause

of the challenged adverse employment action.[5]

[4] While the Court will not search the record for evidence not properly presented by Plaintiff pursuant to Local Rule 7.1(a)(3), it also will not ignore evidentiary material raised by Plaintiff that the Court has reviewed in this matter.  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 431 (N.D.N.Y. 2009).

[5] Defendant proffers two additional reasons for the reduction of Plaintiff's hours. Defendant claims that Plaintiff made racially insensitive comments about a student that came into the CTC during the evening hours and that Plaintiff improperly accessed confidential information in personnel files.  *See* Dkt. No. 27-4 at ¶ 5.  Having found that Plaintiff has not provided any evidence that age discrimination – and not Plaintiff's poor working relationship with her supervisor – was the "but for" reason for her removal from the evening hours at the reception desk, the two remaining proffered reasons are not determinative of this decision.

### *2. Retaliation*

Ostensibly, Plaintiff also claims that after she filed a "Notice of Intent" with the EEOC in November 2012, Defendant retaliated against her by effectively reducing her tutoring hours. *See* Dkt. No. 1 at 10. The ADEA prohibits an employer from discriminating "against any of his employees . . . because such individual . . . opposed any practice made unlawful" under the Act. *Boland v. Town of Newington*, 304 Fed. Appx. 7, 9 (2d Cir. 2008) (citing 29 U.S.C. § 623(d)). Retaliation claims under the ADEA are also analyzed under the *McDonnell Douglas* three-step framework. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997). This burden-shifting analysis applies to a claim for retaliation whether under the ADEA or Title VII (42 U.S.C. § 2000e-3(a)). *See Kessler v. Westchester Ctny. Dept. of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006); *Wanamaker*, 108 F.3d at 465.

Plaintiff has the burden to "establish a *prima facie* case with *de minimis* evidence." *Wanamaker*, 108 F.3d at 465. The elements of a *prima facie* retaliation claim under the ADEA are as follows: (1) the plaintiff engaged in an act protected by the ADEA; (2) the plaintiff's employer knew that the plaintiff was engaged in a protected activity; (3) the employer undertook an adverse employment action against her and (4) "a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Kessler*, 461 F.3d at 205-06 (internal quotation marks omitted) (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *Wanamaker*, 108 F.3d at 465.

A plaintiff does not have to show an actual violation of the ADEA in order to establish her participation in a protected activity. *See Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989). In this case, Plaintiff's act of filing an EEOC charge in November 2012 is a

protected activity.[6]  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  The Court

can infer that Defendant was aware that a charge was filed with the EEOC because the

Commission is statutorily required to "promptly notice all persons named in such charge."  *See* 29

U.S.C. § 626(d)(2).  Also, Defendant responded to the EEOC charge in or about February 2013.

*See* Dkt. No. 1 at ¶ 62; Dkt. No. 12 at ¶ 62.

As discussed, for an employer's action to be considered adverse in an anti-discrimination

claim, the act must affect the terms and conditions of employment.  Although the Second Circuit

had initially adopted this same standard to apply in ADEA retaliation claims, *see, e.g.*,

*Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005); *Richardson*, 180 F.3d at 446, the

Supreme Court has since defined a retaliatory adverse action in broader terms.  *See Burlington N.

& Santa Fe Railway Co. v. White*, 548 U.S. 53, 64-65 (2006).  In a retaliation claim, an

employer's adverse action "must be harmful to the point that they could well dissuade a

reasonable worker from making or supporting a charge of discrimination."  *Id.* at 57 (reasoning

that a "provision limited to employment-related actions would not deter the many forms that

effective retaliation can take").  Therefore, the question here is whether the Defendant's acts

against Plaintiff could have dissuaded a reasonable employee in her position from filing a charge

with the EEOC.  Plaintiff claims that Defendant hired an additional tutor in the areas of

architecture and interior design and that Wendy Hammond wait-listed two potential students in

---

[6] To the extent that Plaintiff claims that the filing of her informal, human resources
complaint via email on October 29, 2012 is a protected act, the Court finds that it was not.  The
informal complaint reports that Plaintiff and Wendy Hammond have a hostile work relationship
and, at most, describes being treated unfairly.  *See* Dkt. No. 29 at 26.  However, the
correspondence does not reference or indicate unlawful discriminatory practices.  *See, e.g.*,
*Mabry*, 769 F. Supp. 2d at 397 n.2 (finding that, although informal protests of unlawful
discrimination can be a protected activity, email that does not show age-motivated, unfair
treatment does not qualify).

interior design.[7]  *See* Dkt. No. 1 at 10.  The Court finds that these actions make out a *prima facie*

claim.

The Court finds that, for purposes of establishing a *prima facie* case, there is evidence of a

causal connection between the protected activity and the hiring of an additional tutor.  The

Plaintiff's evidence presented to the Court on this motion does not establish exact dates of the

alleged acts of withholding tutoring students and hiring another tutor.  However, a causal

relationship can be established "'by showing that the protected activity was closely followed in

time by the adverse employment action,'" *Gorzynski*, 596 F.3d at 110 (quoting *Gorman-Bakos v.*

*Cornell Coop. Extension of Schenectady Ctny.*, 252 F.3d 545, 554 (2d Cir. 2001)).  Here, there is

no evidence to indicate whether the acts of withholding students took place before or after

Defendant knew Plaintiff filed a charge with the EEOC.  Therefore, no inference of causal

connection can be drawn between these two acts, and Plaintiff's claim fails on those allegations.

However, in the Statement of Material Facts, Defendant established that another architectural

technology tutor was hired in the Spring 2013 semester.  *See* Dkt. No. 27-2 at ¶ 31.  This is

enough to establish a temporal relationship between the filing of the EEOC charge in November

2012 and the hiring of another tutor in the Spring 2013 semester.  *See Gorzynski*, 596 F.3d at 110

(noting that a period of five months is not too attenuated to establish a temporal relationship of

causation in a *prima facie* retaliation case).

The *McDonnell Douglas* framework then shifts the burden to Defendant to "articulate a

legitimate nondiscriminatory reason" for its actions.  *See id.* at 111.  Here, Defendant has met this

---

[7] To the extent that Plaintiff claims that the loss of her hours at the evening reception desk was an act of retaliation, the Court finds that it was not an adverse action taken in retaliation for filing an EEOC charge because she lost those hours in October 2012 before Plaintiff filed a complaint or the EEOC charge.  *See* Dkt. No. 1.

burden.  Defendant submitted an affidavit from Tutor Coordinator, Ted Mathews, in which he

affirms that this new tutor was not hired to replace Plaintiff.  *See* Dkt. No. 27-2 at ¶ 31.  Instead,

Defendant explains that the hiring of more than one tutor in a discipline is done as a normal part

of CTC operations to meet the student demand.  *See id.*  According to Ted Mathews, several

students were not able to come for tutoring during Plaintiff's posted availability due to scheduling

conflicts.  *See* Dkt. No. 27-6 at ¶ 5.

Finally, the burden shifts back to Plaintiff to "produce evidence that casts significant

doubt," leaving a triable issue as to whether Defendant retaliated against her for filing a charge

with the EEOC.  *See Gorzynski*, 596 F.3d at 111.  Defendant has established through submitted

evidence that Plaintiff continued to work in the CTC as a temporary, part-time employee through

the Spring 2013 semester.  *See* Dkt. No. 27-2.  Plaintiff was not terminated but did not return to

the CTC for the Fall 2013 semester.  *See id.* at ¶¶ 33-34.  In her opposition papers, Plaintiff

acknowledges that she did not provide her availability for the Fall 2013, Spring 2014, and Fall

2014 semester to the proper person.  *See* Dkt. No. 33-1 at ¶ 12.  Plaintiff implies that Defendant

had a duty to inform her that she sent her information to the wrong person.  *See id.*  The Court

disagrees.  With over 120 tutors employed by Defendant in the CTC, it is not suspect that no one

personally contacted Plaintiff when her availability was not received.  *See* Dkt. No. 27-2 at  ¶ 32.

On Defendant's motion, Plaintiff does not raise any other relevant evidence to her retaliation

claim.[8]

---

[8] In support of Plaintiff's motion for summary judgment, she attached email
correspondence presumably between an adjunct teacher, Randy Frech, and the CTC Coordinator,
Daniel Bartlett, regarding Plaintiff's tutoring availability during the Spring 2013 semester.  *See*
Dkt. No. 29 at 23.  If this evidence were properly presented in opposition to Defendant's motion
for summary judgment, it would not defeat Defendant's motion.  The correspondence provides
further support that the CTC did not have enough tutoring availability for their students'
architecture classes.  *See id.*

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 22, 2016
         Albany, New York

Mae A. D'Agostino
U.S. District Judge